JULIUS ASMOSSEN, Appellee, *vs.* SWIFT & Co., Appellant.

*Opinion filed December 22, 1909.*

1. NEGLIGENCE—*whether servant acted with sufficient prompt-ness in getting out of dangerous place is for the jury.* Where a servant is suddenly confronted with some danger arising from a condition which did not exist when he entered upon his work, it is ordinarily a question for the jury whether he acted with such promptness and care in getting out of the danger as a reasonable man would have exercised under the circumstances.

2. INSTRUCTIONS—*when refusal of correct instructions will not reverse.* When the issues in a case are simple and the jury are fairly and fully instructed as to the law it is not reversible error to refuse further instructions, even though they may correctly state the principles of law.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

WINSTON, PAYNE, STRAWN & SHAW, (JOHN BARTON PAYNE, and JOHN D. BLACK, of counsel,) for appellant.

WEST, ECKHART & TAYLOR, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the appellee, Julius Asmossen, against the appellant, Swift & Co., in the superior court of Cook county, to recover damages for a personal injury alleged to have been sustained by the appellee while in the employ of the appellant, through the negligence of appellant. The declaration contained one count and the general issue was filed, and upon a trial the appellee recovered a verdict and judgment against the appellant for the sum of $2000, which judgment has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court for a directed verdict in its favor, which motion was overruled, and the principal question argued in this court is that the court erred in refusing to take the case from the jury at the close of all the evidence.

The facts disclosed by the record, in brief, are as follows: The appellee was in the employ of the appellant as a tinner, and on the 29th day of August, 1905, the foreman of the lard refinery of the appellant directed the appellee to go to a room on the fifth floor of its plant and repair a pipe. The room where the pipe was situated was about thirty feet in length from east to west and twenty feet from north to south. Near the south-west corner of the room was a vat about ten feet in length, three and one-half feet in height and three and one-half feet in width, made of two-inch plank. The west end of the vat stood about four feet from the west end of the room and the south side of the vat was about four feet north of the south side of the room. In this vat greasy rags and cloths which were used in the business of the appellant were cleansed. Cold water was admitted to the vat through a pipe, and steam was also admitted to the vat, by which the water was heated, by a pipe which divided near the bottom of the vat and ran along near its north and south sides, and the steam entered the vat through small holes, situated three or four inches apart, in these latter pipes. The large pipe which appellee was directed to repair ran east and west, six or eight feet above the center of the vat. The appellee went, with his helper, to the room where the pipe was located and placed a plank about six feet long, one foot wide and one and one-half inches thick upon the top of the east end of the vat and across an iron rod which ran through the center of the vat from north to south, near its top. The appellee stood upon this plank and with the assistance of his helper took down the old pipe and meas-

ured the place it had occupied, and then went to the tin shop and made a new pipe to take the place of the section of the old pipe which he had removed. The new pipe was six inches in diameter, was ten or twelve feet long and weighed about sixty pounds. He returned with his helper, and they placed the new pipe through certain straps attached to the ceiling of the room and proceeded to connect it with the old pipe at each end. When they first went to the vat it was empty. When they returned with the new pipe the workman in charge of the vat had commenced to admit water and steam to the vat. The appellee asked him to admit no water and steam to the vat until they were through with the work, and he turned off the water and steam. The appellee got upon the plank near its east end. After a short time the workman again turned on the water and the steam. The appellee again requested him to turn off the water and steam, and he said, "I can't wait for you fellows; I have to get my day's work done." The top of the sides of the vat was covered with grease and it soon became slippery from the effect of the hot steam and the steam from the vat soon surrounded the appellee, and while attempting to push the elbow of the new pipe onto the collar of the old pipe at the east end of the vat the plank slipped on the end of the vat and the appellee was precipitated into the hot water in the vat, and his feet, and his legs as far up as his knees, were severely scalded.

It is urged by the appellant that the appellee assumed the risk of being injured in the manner in which he was injured and was guilty of such contributory negligence that he cannot recover. The servant of appellant turned the water and steam into the vat while the appellee was standing upon the plank, and at the time appellee went upon the plank he was in a safe place, and he clearly did not assume the risk of being injured by the servant of the appellant turning into the vat the water and steam while he was upon the plank. The most that can be said is, that the appellee

was negligent in remaining upon the plank, after the water and steam were turned in, a sufficient length of time for the steam to heat the water and soften the grease upon the vat and render it in such shape that the end of the plank would not remain stationary on the top of the vat. The appellee had the work of connecting the pipe about completed, and he remained upon the plank from three to six minutes, only, after the steam was turned on, and it was a difficult matter to get down from the position he was in after the steam was turned on and the plank and vat were rendered slippery by the grease becoming heated from the steam. This court has often held that the question of assumed risk and the question of contributory negligence are questions of fact, and that those questions should be submitted to the jury unless the decision of those questions is so clear upon the evidence that all reasonable minds would agree as to how they should be determined. When, however, by reason of the conflicting character of the testimony or the uncertain conclusions which might legitimately be drawn from the evidence reasonable minds would disagree as to the manner in which those questions should be decided, the decision of those questions should be left to the jury. We think in this case that it is clear that it can not be said, as a matter of law, that the appellee was bound to assume, when he went upon the plank which he was using, that the workman in charge of said vat would turn the water and steam into the vat, especially after he had requested him not to turn it in and he had once turned it off, and that it cannot be said, as a matter of law, that it was negligence on the part of the appellee to be upon the plank or to remain upon the plank from three to six minutes after the water and steam had been turned on, but think the question of assumed risk and the question of contributory negligence were properly left to the jury. If the appellee had climbed upon the plank when the steam and water were turned on, with full knowledge of the ef-

fect of the steam upon the greasy vat, and remained in that position and without any attempt to extricate himself from the peril of being precipitated into the hot water, a different question might be presented for decision.

In the most, if not all, of the cases relied upon by appellant the party who was held to have assumed the risk or to have been guilty of contributory negligence was injured by some obvious danger which existed at the time he entered upon the undertaking in which he was injured or which became obvious in the prosecution of the work, and he, with a full knowledge of the danger which confronted him, failed to extricate himself when he had an opportunity so to do. But where a person is suddenly confronted with some danger arising from some defect which was not obvious when he entered upon the work in which he was engaged, it ordinarily rests with the jury to say whether he acted with sufficient promptness and with such care for his personal safety in extricating himself as a reasonable man should have acted under the circumstances.

It is also urged the court erred in permitting the appellee to state, as a witness, that the reason he did not leave the plank when he discovered the water and steam had been turned into the vat was that he could not get down, as the steam was so thick that the plank had become slippery, on the ground, it is said, that the statement made by the witness was but a conclusion as to his reasons for not leaving the plank. The witness had already given all the facts to the jury as to the condition which surrounded him at the time the end of the plank slipped upon the top of the vat, and it would have been as well, perhaps, not to have permitted him to state in express terms why he did not jump to the floor from the plank, which was suspended over the boiling water and hot steam in the vat. We do not think, however, the appellant was injured by the testimony complained of or that the case should be reversed by reason of the admission of that testimony.

It is also said the court improperly refused to instruct the jury on behalf of the appellant. The issues involved were very simple. The practice of encumbering the record by giving to the jury a large number of instructions which contain only general principles of law which will not particularly elucidate to the jury the law which should be applied by them to a decision of the case then under consideration should not be favored by trial courts. While such instructions, when offered, may be, in general, good law, if the jury have been fully and fairly instructed as to the law by other instructions the refusal of such instructions ought not to be held reversible error. We think the jury were fully and fairly instructed as to the law of the case.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*